

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 19 2008

JAMES W. McCORMACK, CLERK
By:_____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

Jeff Cole and Kayla Cole, on behalf of themselves, and all others similarly situated in the State of Arkansas,

           Plaintiffs,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, CHICAGO TITLE INSURANCE COMPANY, TICOR TITLE INSURANCE COMPANY, TICOR TITLE INSURANCE COMPANY OF FLORIDA, FIDELITY NATIONAL FINANCIAL, INC., FIRST AMERICAN TITLE INSURANCE COMPANY, UNTIED GENERAL TITLE INSURANCE COMPANY, CENSTAR TITLE INSURANCE COMPANY, T.A. TITLE INSURANCE COMPANY, FIRST AMERICAN CORPORATION, COMMONWEALTH LAND TITLE INSURANCE COMPANY, COMMONWEATH LAND TITLE INSURANCE COMPANY OF NEW JERSEY, LAWYERS TITLE INSURANCE CORPORATION, TRANSATION TITLE INSURANCE COMPANY, LANDAMERICA FINANCIAL GROUP, INC., STEWART TITLE GUARANTY COMPANY, NATIONAL LAND TITLE INSURANCE COMPANY, STEWART INFORMATION SERVICES CORPORATION, OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, AMERICAN GUARANTY TITLE INSURANCE COMPANY, OLD REPUBLIC INTERNATIONAL CORPORATION, TITLE INSURANCE RATING BUREAU Of PENNSYLVANIA, AND TITLE INSURANCE RATE SERVICE ASSOCIATED, INCOPRORATED

           Defendants.

Civil Action No. 4:08-CV-00217 WRW
Class Action Complaint
Jury Trial Demanded

This case assigned to District Judge Wilson
and to Magistrate Judge Jones

1

## PRELIMINARY STATEMENT

1.  Plaintiffs, Jeff and Kayla Cole, by their attorney, Michael L. Roberts, on behalf of themselves and all others similarly situated, bring this action against defendants for their illegal restraint of trade for price-fixing the rate consumers pay for title insurance.

## JURISDICTION AND VENUE

2.  Plaintiffs bring this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and for damages as well as reasonable attorneys' fees and costs under Section 4 of the Clayton Act, 15 U.S.C. § 15.

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a).

4.  Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c) because the defendants conduct business in this judicial district.

## PARTIES

5.  Plaintiffs Jeff and Kayla Cole are residents and citizens of the State of Arkansas. During the Class Period, plaintiffs purchased title insurance from defendant, Lawyers Title Insurance Corporation, in connection with the purchase of residential real estate in the state of Arkansas.

6.  Defendant, Title Insurance Rate Service Association Incorporated

("TIRSA"), is a voluntary association of title insurance companies with headquarters in New York City, New York.

7. TIRSA is comprised of all title insurance companies licensed to do business in New York, but the organization was founded and continues to be controlled by the "Big Four" title insurance companies: Stewart Information Services Corporation, Fidelity National Financial, Inc., First American Corporation, and LandAmerica Financial Group, Inc.

8. Defendant, Stewart Information Services Corporation ("Stewart"), is a Delaware corporation headquartered in Houston, Texas. Through its subsidiaries Stewart sells title insurance to purchasers of commercial and residential real estate throughout the United States, including Arkansas.

9. Defendants Stewart Title Insurance Company ("Stewart Title") and Monroe Title Insurance Corporation ("Monroe Title") are wholly owned and controlled by Stewart. Stewart Title and Monroe Title are engaged in the conduct alleged herein with the approval and assent of Stewart. Since TIRSA's inception, Stewart Title and Monroe have sold, and continue to sell, title insurance at artificially high rates to consumers of residential and commercial real estate in Arkansas.

10. Defendant, Fidelity National Financial, Inc. ("Fidelity"), is a Delaware corporation with headquarters in Jacksonville, Florida. Fidelity is engaged in selling title insurance to purchasers of commercial and residential real estate throughout the United States, including Arkansas.

11. Defendants Fidelity National Title Insurance Company ("Fidelity National Title"), Chicago Title Insurance Company ("Chicago Title"), and Ticor Title Insurance Company ("Ticor Title") are wholly-owned Fidelity subsidiaries that sold and continue to sell title insurance at artificially high rates to consumers of residential and commercial real estate in Arkansas and throughout the United States. Defendants Fidelity National Title, Chicago Title and Ticor Title engaged in this conduct with the approval and assent of Fidelity. The Fidelity Defendants revenues for 2006 were roughly $9.4 billion.

12. Defendant, Title Insurance Rating Bureau of Pennsylvania ("TIRBOP"), is a voluntary association of title insurance companies.

13. Defendant TIRBOP's membership is substantially similar to Defendant TIRSA's membership.

14. TIRBOP and TIRSA gather data from their membership about insurance premiums, costs and losses and create rate setting manuals that are used by defendants to set title insurance prices. Using TIRBOP, TIRSA and other substantial similar organizations, defendants have charged identical and collectively-fixed title insurance rates to consumers in Arkansas.

15. Defendant, First American Corporation ("FAC"), is a California corporation with headquarters in Santa Ana, California. Through a collection of wholly-owned subsidiaries, including defendants First American Title Insurance Company of New York, United General Title Insurance Company and their affiliates, First American is engaged in selling title insurance to purchasers of

commercial and residential real estate throughout the United States, including Arkansas. Nationally, First American accounts for approximately 29% of title insurance premiums.

16. Defendants First American Title Insurance Company in New York (First American Title) and United General Title Insurance Company (United General Title) are wholly-owned First American subsidiaries that sold and continue to sell title insurance at artificially high rates to consumers of residential and commercial real estate in Arkansas and throughout the United States. Defendants First American Title and United General Title engaged in this conduct with the approval and assent for First American. FAC had 2006 revenues of roughly $8.5 billion.

17. Defendant, LandAmerica Financial Group, Inc. ("LandAmerica"), is a Virginia corporation with headquarters in Glen Allen, Virginia. LandAmerica, through a collection of subsidiaries, including defendants Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation and their affiliates, sells title insurance to purchasers of commercial and residential real estate throughout the United States, including Arkansas. LandAmerica's 2006 revenues were approximately $3.15 billion.

18. Defendants Commonwealth Land Title Insurance Company (Commonwealth Land Title) and Lawyers Title Insurance Corporation (Lawyers Title) are wholly-owned LandAmerica subsidiaries. Commonwealth Land Title and Lawyers Title were founding members of TIRSA, and since TIRSA's inception have

5

charged title insurance rates in Arkansas that TIRSA collectively sets. Commonwealth Land Title and Lawyers Title sold and continue to sell title insurance at artificially high rates to consumers of residential and commercial real estate in Arkansas. Commonwealth Land Title and Lawyers Title engaged in this conduct with the approval and assent of LandAmerica.

19. Various persons and entitles, whose identities are presently unknown to plaintiffs, participated as co-conspirators in the violations alleged in this complaint and have performed acts and made statements in furtherance of the violations. When plaintiffs learn the identities of these co-conspirators, plaintiffs will seek leave to amend this complaint to add them as defendants.

20. The acts alleged in this Complaint have been done by some or all of the defendants and their co-conspirators, or were authorized, ordered, or done by their respective officers, agents, employees or representatives while they actively engaged in the management of each defendants' business or affairs.

21. Each of the defendants acted as the agent for joint venture of or for the other defendants with respect to the acts, violations and common course of conduct alleged in this complaint.

22. Various other persons, firms, corporations and entities have participated as co-conspirators with defendants in the violations and conspiracies alleged in this Complaint. These unnamed co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein.

## FRAUDELENT CONCEALMENT

23.  Defendants and their co-conspirators actively and fraudulently concealed their unlawful conduct so that the conduct could not be detected.

24.  As a result of the defendants' concealment of the conspiracy, any and all applicable statutes of limitations have been tolled.

## CLASS ACTION ALLEGATIONS

25.  Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following Class:

> **All individuals and entities who purchased title insurance in Arkansas directly from the defendants, their subsidiaries, agents and/or affiliates from the earliest date allowable by law through the present (the "Class Period").**
>
> **Specifically excluded from this Class are the defendants; the officers, directors, or employees of any defendant; any entity in which any defendant has a controlling interest; and any affiliated, legal representative, heir or assign of any defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action, the members of his/her immediate family, the presiding judicial officer's staff, and any juror assigned to this action and counsel for plaintiffs.**

26.  Members of the Class are so numerous that their individual joinder is impracticable. It is estimated that the Class consists of thousands of members.

27.  Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. These common questions include:

> a.  Whether defendants engaged in a contract, combination or conspiracy among themselves and/or their co-conspirators to

7

raise, fix, and maintain the prices of title insurance sold in Arkansas;

b. The identity of the co-conspirators;

c. The duration of the conspiracy;

d. Whether the conspiracy violated Section 1 of the Sherman Act;

e. Whether defendants actively concealed the conspiracy;

f. Whether defendants' conduct caused artificially inflated prices of title insurance; and

g. Whether plaintiffs and other members of the Class were injured and, if so, the class-wide measure of damages and appropriate injunctive relief.

28. Plaintiffs' claim is typical of the claims of the Class in that plaintiffs bought title insurance from one of the defendants and, like all Class members, was damaged by the wrongful conduct of defendants and their co-conspirators, and seeks relief common to the Class.

29. Plaintiffs are an adequate representative of the Class because plaintiffs' interests do not conflict with the interest of the members of the Class plaintiffs seeks to represent.

30. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by plaintiffs and plaintiffs' counsel.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this case as a class action.

## FACTS

32. Title insurance is required by lenders for most residential and commercial real estate transactions. The purchaser pays a title insurance company to protect against defects in title.

33. Consumers do not shop for title insurance. The title insurance agent is selected by the closing agent.

34. Because of historical information and fast accurate title checks, defects in titles are rare, which means that very few title insurance payouts are necessary. Despite low claims payouts and decreasing administrative costs, title insurance rates have increased substantially over recent years. Consumers in this state and across that nation pay artificially high title insurance premiums because the title insurance market operates in a collusive manner.

35. The Insurance Department is charged with reviewing the rates the defendants collectively set. But the insurance companies have undermined the Insurance Department's ability to carry out this charge by basing the rates primarily on costs that the Department has no authority to review.

36. There is little variation in the cost of a title insurance policy in given state. TIRSA's and TIRBOP's collectively-fixed rates for title insurance are based on a percentage of the total value of the property that is being insured.

37. TIRSA's and TIRBOP's fixed rate calculation includes two cost components. One is the risk associated with issuing the title policy and the other is the "agency commission" paid to title agents.

38. The risk component covers the risk the title insurer bears for any undiscovered defects in the title. As alleged above, there is a little risk associated defects in title.

39. It is the agency commission component that the Insurance Department cannot effectively review and worse, the Insurance Department does not have regulatory authority to review. Agency commissions are payments made to title agents. A small portion of the agency commission is for the cost of title searches. The majority of the agency commission is used to provide financial incentives to title agents.

40. The agency commissions comprise nearly 85% of the total rate that TIRSA and TIRBOP calculate. The defendants' scheme allows them to collectively fix title insurance costs at an artificially high rate.

41. Before TIRSA and TIRBOP, there were other associations that fixed prices for title insurance. These associations were disbanded in the mid 1980s in the wake of a Federal Trade Commission challenge to the collective rate-setting activity in many of these associations. In 1992, the United States Supreme Court

held that these rate-setting activities constituted *per se* illegal price fixing unless the rate-setting is subject to the states' active supervision. *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992).

42. After *Ticor*, the "Big Four" companies established TIRSA and TIRBOP and used the organizations to implement a rate-setting scheme while evading the state oversight the Supreme Court mandated in *Ticor*. TIRSA and TIRBOP submits this aggregate data to the Insurance Department with Defendants' collectively-set insurance rates, but neither that data nor Defendants' set premiums can be meaningfully reviewed or approved by the Insurance Department.

43. In November 2006, the Insurance Department held public hearings questioning TIRSA's failure to provide the details of agency commission costs. In the process, the Insurance Department acknowledged that, through TIRSA, the title insurance defendants set premium rates that the Department cannot meaningfully review.

44. The Insurance Department pointed to the outsourcing of commission costs as the reason it cannot effectively evaluate title insurance rates. At the hearings the Executive Director of TIRSA admitted that: (a) TIRSA had no idea whether the title agents profits were reasonable; (b) the title agent gets 85 percent of the premium, but TIRSA members have no control over what happens to that premium; and (c) that TIRSA members have no idea what is done with that premium.

45. TIRSA also admitted that it does not even know how much title agents spend to conduct a title search.

46. The Deputy Superintendent and General Counsel of the Insurance Department said that the Department cannot evaluate TIRSA's rates and thus the department had no way of knowing whether the rates were reasonable.

47. In April 2007, the federal government released findings made by the Government Accountability Office after studying the industry conditions of several states. The GAO concluded that the title insurance industry must be subject to greater state regulation, stating that "state regulators have not collected the type of data, primarily on title agents' costs and operations, needed to analyze premium prices and underlying costs."

48. Without significant and meaningful regulatory review, the defendants have been able to collectively fix title insurance rates at supracompetitive levels.

## COUNT I

49. Plaintiffs incorporate and reallege as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

50. Beginning at a time presently unknown to plaintiffs, but a least as early as the start of the Class Period, defendants and their co-conspirators have entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially set, raise, fix, and/or maintain prices for title insurance. This contract, combination and conspiracy is illegal *per se* under Section 1 of the Sherman Action, 15 U.S.C. § 1.

51. In formulating and carrying out the alleged agreement, understanding and conspiracy, the defendants and their co-conspirators combined and conspired to commit acts, practices and a course of conduct set forth above, and the following:

   a. Collectively set, fix, raise, and maintain artificially inflated title insurance rates;

   b. Included within their collectively-fixed rates the cost of commissions paid to title agents, including payoffs, kickbacks, and other charges unrelated to the issuance of title insurance;

   c. Hide these supposed costs from regulatory scrutiny by funneling them to and through title agents; and

   d. Evaded regulatory oversight by failing to disclose the payoffs, kickbacks and other charges unrelated to the issuance of title insurance.

52. Defendants' contract, combination or conspiracy has caused substantial anti-competitive effects in the title insurance market. They have done so by causing plaintiffs and other purchasers of title insurance in Arkansas to pay significantly more for title insurance than they would have in the absence of the wrongful conduct and/or illegal activity.

53. As a direct and proximate result of defendants' wrongful conduct and/or illegal activity, and the violations of Section 1 of the Sherman Act as herein alleged, plaintiff and the Class have been injured in their business and property in an amount to be determined at trial.

54.   Such violations and the effects thereof are continuing and will continue unless the Court enjoins defendants from continuing their conspiracy in restraint of trade.

## PRAYER FOR RELIEF

WHERFORE, plaintiffs and other members of the Class pray for relief as follows:

A.   That this action be certified and maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.   That plaintiffs be appointed as class representative and plaintiffs' counsel be appointed as lead counsel for the Class;

C.   That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act.

D.   That plaintiffs and the Class recover damages, as provided by federal antitrust laws, and that a joint and several judgment in favor of plaintiffs and the Class be entered against the defendants in an amount to be trebled in accordance with such laws;

E.   That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner, continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other

conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F. That plaintiffs and members of the Class be awarded pre-and-post judgment interest, and that the interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

G. That plaintiffs and members of the Class recover their costs of this suit, including expert costs and reasonable attorneys' fees as provided by law; and

H. That plaintiffs and members of the Class be awarded such other relief as this Court deems appropriate.

Date: March 18, 2008                    Respectfully submitted,

*/s/ Michael L. Roberts*

Michael L. Roberts
Attorney at Law
20 Rahling Circle
P.O. Box 241790
Little Rock, AR 72223

Counsel for Plaintiffs and the Class